May I proceed? Thank you, Chief Judge Thomas. I may have pleased the court. My name is Christine Van Aken and I represent the City and County of San Francisco this morning. San Francisco brought this case to address the chronic and persistent failures of the Pipeline and Hazardous Materials Safety Administration, or PHMSA, to implement its statutory duties under the Pipeline Safety Act. And we come to this court on appeal from the District Court's order dismissing this case at the pleading stage. I'm going to start with the arbitrary and capricious issue, then I'm going to move on to the failure to perform a mandatory duty, and finally I'll discuss the citizen suit issue. Now I think there are some hard questions on this appeal, but the adequacy of San Francisco's pleading that PHMSA has arbitrarily and capriciously issued annual certifications or accepted annual certifications from CPUC is not one of the hard questions in the case. What we've alleged is that this process results in a final agency action, which is the acceptance of the certification. And let me just describe that a little bit. What PHMSA does is it conducts a program evaluation and a program review and it has the agency fill out a checklist to say what it's doing and what it's not doing. The agency, CPUC, proposes a grade and then PHMSA accepts or rejects that, and on that basis it applies its formulas to fund CPUC. So there's a decision. And what we need to show to show that that's arbitrary and capricious, that annual decision-making process, each and every annual decision, is that there was a final agency action that was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, and that's 706A2. And then we need to show that this isn't the kind of decision that's committed to agency discretion by law, which is 701, sorry, that was 7062A is arbitrary and capricious, and this the agency action committed to agency discretion by law is 701A2. So those are three things that we need to show. And what I want to emphasize initially, and this is a capricious piece, is that the administration, the administration does not contest those first two prongs. There is no argument in the Respondent's Brief that there's not a final agency action each and every year in accepting certification, and there's no argument in the Respondent's Brief that San Francisco has not adequately pleaded that the agency has acted arbitrarily and capricious. The only argument that appears on the merits in the government's brief and the administration's brief on this issue is that this is the kind of agency action that is committed to agency discretion by law. It's the 701A2 issue of the Administrative Procedures Act. Well, that is a very narrow exception. I mean, this Court has said that we presume there's a presumption that agency action is reviewable. And what the government claims is that there are two categories of unreviewable agency action that this decision falls into. The first is failure to initiate enforcement proceedings, and the second is the budgeting discretion that agencies have. But those are both very narrow categories, and this case doesn't fall into either of them. Failure to initiate an enforcement proceeding is like I'm not going to bring an action for civil penalties against CPUC, or I'm not going to revoke CPUC's certification after issuing notice to CPUC and having a hearing. But the agency is not accused here simply of failing to take enforcement action. The agency is accused of arbitrarily and capriciously accepting these certifications and issuing a grade of 95 or 100, for instance, in the years at issue here. The agency is affirmatively issuing a grade to CPUC. And so it's not simply a failure to take some action that we allege the agency should take. And so this exception, this Heckler v. Cheney exception, is quite a narrow one, and it doesn't apply where the agency is taking an affirmative action. The second kind of category that PHMSA says today that this decision falls into is agency discretion over budgets. But that's like saying any time we're talking about money, it's unreviewable. Because that's really the only ‑‑ it is true that the decision to accept the certification and issue a grade to CPUC results in the issuance of money to CPUC. That's true. But that doesn't make it a budget decision that's unreviewable. Those kinds of cases are cases where an agency says, I'm not going to fund this Indian child welfare program anymore. I'm just not going to issue any more funds for that program. Or I'm not going to fund contracts in California for Indian tribes to do law enforcement. I'm just not funding that anymore. This isn't that kind of case. The agency here is funding a pipeline safety enforcement program by the states. And the argument here is that we're making is that the agency is arbitrarily and capriciously accepting CPUC certifications and issuing funding according to a formula. In other words, it is applying the formula in an arbitrary and capricious way. And that's very different from saying, you know, the agency should be doing more in this program area than it's doing today. But counsel, I understand your position. But if you're correct, and this is what I'm having the struggle with. Yes. It seems to me that any time an agency is like the EPA or I'm glad you pronounced it PHMSA. I didn't know that's how you pronounced it. PHMSA. That's how I say it. It seems like any time they evaluate anything, especially when they have a partnership with a state, which many of these agencies do, any time they score something, evaluate something, someone could jump in under the EPA and try to block that. And that's usually not the law that we have. So make me feel better about this. Yeah. I actually respectfully disagree with that. Because they are scoring and issuing an annual certification. And the thing that you're concerned about, it sounds like to me, is that people can just jump in and sort of file Administrative Procedure Act claims any time the agency does anything. But the argument here that what cabins that is the final agency action requirement of Administrative Procedure Act Section 704. In other words, there has to be a meaningful consequence that flows. It has to be the agency's final word about something. It has to be the consummation of a process. Here there is an annual certification process. The consummation of that process is the — is PHMSA's acceptance of CPUC certification. It's giving a grade to CPUC and dispersing funds on that. That is PHMSA's final word about CPUC's compliance with the statute for any given year. And there's no reason — that is a final agency action. And the government doesn't allege otherwise. And what this case is really analogous to, I think, is Citizens of Overton Park v. Volpe. That's a canonical administrative law case where what the Secretary of Transportation did is it issued federal highway funding based on a local assertion that routing a highway through a park was the only feasible alternative for the highway. The Secretary said, here's your local assertion. I think that's good enough. Here's your funding. It's the same thing that's happening here. And I don't think it changes. The fact that it happens annually, I don't think, makes it not a final agency action. And the government doesn't really argue that. Well, I think that's where the discretionary aspect and the final agency can blend. For example, I assume for this oral argument, someone at PHMSA or someone at the EPA may have — PHMSA, I guess, here — authorized, okay, we'll have someone from the EPA travel and watch the oral argument. All right, that's a — there's a — I'm making the final decision on behalf of PHMSA. One attorney can come to the oral argument. But no legal consequences flow from that. Nothing flows from that. Well, there's an expenditure of money. There is an expenditure of money, but it's not — but that's not the only consequence. There's nothing — it's a legal determination that this is what CPUC has done. It transfers jurisdiction. I mean, this is actually a very consequential — this is actually a very consequential decision, because on an annual basis, there's a jurisdictional determination that flows from the certification process. For states that do not have a certification in place, the Federal Government is the first regulator of pipeline safety. States that do submit a certification and receive money for — for carrying out their duties, they are the ones who are the initial regulators. So that jurisdictional determination, which appears in 105A, I believe, 60105A of the Pipeline Safety Act, is what flows from this decision. And it's an annual determination. That's just the nature of it. But that's a really important legal consequence that flows. And so the other thing — my good case on this is a case that — I'm going to take a moment to talk about grazing. And it's a decision by Judge Paez of this Court fairly recently, and perhaps I'll find it during — between my rebuttal and now. But it's cited in the briefs. And what the Bureau of the — Department of the Interior had issued these leases, and then every year, they had to issue sort of an annual — they had these leases with grazers, and they had to sort of issue an annual set of bounds for the leases. And the Court says, well, each of those are final agency actions, for example. And the other thing — the other case I want to point the Court to is Neighbors of Cuddy Mountain. Neighbors of Cuddy Mountain is a case that says it's true that generally monitoring is not a final agency action. It's true that for the most part, when the agency is just sort of carrying out its duties and keeping an eye on things, those are not final agency actions. But a final agency action from which legal consequences flow also can include a claim that there's a failure to monitor. So, in other words, PHMSA's failure to determine whether CPUC is adequately enforcing the law each and every year is embodied in this final certification that has this legal consequence of transferring jurisdiction to initially regulate from the federal government to the states. That's a final agency action. And lastly, I just want to emphasize on this point that the government hasn't made an argument in the briefs that this isn't a final agency action. The only argument in the briefs about San Francisco's 7012A arbitrary and capricious claim is that it is committed to agency discretion by law. There are no standards here that you can apply. And as I've emphasized, or as I've tried to emphasize, those are very narrow decisions. Failure to initiate an enforcement action, failure to allocate money to a program. It's not the case that any time we're talking about monitoring compliance, we're talking about an enforcement action. And it's not the case that any time we're talking about money, we're talking about a budgeting action. But that's really the implication of the government's argument. But let me stop you there. The PSA itself is directed very narrowly to violation, and the violation tends to attach to the regulated party. And as you said moments ago, essentially the federal government, it would seem to me, has the discretion by law to defer the decisions and put the role of regulator into the state agency. And that's what they've done here. So aside from the arbitrary and capricious issue, the very ability to seek mandamus seems to be categorically against the regulator, which is not the party before the court as the appellee here. So that is a separate issue, and I'd be glad to address it. I want to point out that that is a separate cause of action. I understand, but it seems like it's very significant in terms of the first step through the door. Well, I do think we brought a claim under the APA. We brought two claims under the APA and two under the Pipeline Safety Act. So if the court decides, agrees with Judge Seaborg and decides, hey, San Francisco, you can only sue a regulated entity under the citizen suit provision, that doesn't end this case. The court still has to decide whether we've stated a claim under the APA, either as an arbitrary and capricious agency action or as a failure to take a mandatory act. But let me turn to Your Honor's question about the citizen suit provision. Our argument here is textual and simple. The statute, 6121, 49 U.S.C. 6121, says that the state agency that we can sue, any person can sue for injunctive relief for a violation of this chapter, you can sue a person, and a person here includes the United States government. So a person may bring a civil action for a violation of this chapter or a regulation, sorry, I skipped, against another person, including the United States government. So my argument is really simple. The government isn't an operator of pipelines. The government isn't someone who is regulated by the Pipeline Safety Act. And so the only possible way that the United States government can violate a provision of this chapter is by failing to take an administrative action that it's required to take or by abusing its discretion in taking a final agency action. That's the only way the United States can violate this chapter. So our argument is textual and simple. Those words have no meaning. If you don't interpret the PSA the way that we urge you to. I'd like to turn back to arbitrariness and capriciousness for just one moment because I want to address the substantive standard. The substantive standard here is that we have to allege that the agency was arbitrary and capricious, that it abused its discretion or that it did something outside of law. And I think the best case for us is the Montana briefs. In that case, the court said, look, agency, you've issued this travel plan based on this wilderness study area, but you failed entirely to consider this important aspect of the problem that you're supposed to be addressing, which is preservation of wilderness in a wild state, because you failed to consider how many people are actually traveling through this wilderness on motorized vehicles today and what increase that is over 1977. You just So that states a claim that is arbitrary and capricious. And that's very similar to the claim that we're making here, which is that agency, you haven't considered actual enforcement. You've certified, you've rubber-stamped CPUC's certifications annually, even when you know, even when you know, this is in paragraph 100, for instance, of the complaint, you know that PG&E doesn't have an adequate pipeline integrity management program, and nonetheless, you're giving a 95 or 100 score to CPUC for, because its operators have adequate pipeline integrity management programs, for example. So I'm going to reserve the remainder of time for rebuttal, if I may. Thank you. May it please the Court. Patrick Nomeroff on behalf of the Department of Transportation. Let me start by saying, as counsel for the city points out, at this stage of the litigation, this case is not about whether there has been final agency action. And it certainly is not about evaluating the merits of the city's claim. The reason the city's claim fails is because they have not identified a discrete and mandatory action that the agency has required but failed to take. And instead, they challenge only enforcement decisions and funding allocation decisions that are committed to agency discretion by law. And the easiest way to see that is to look directly at the statutory provisions themselves, because they make it very clear. So under the Pipeline Safety Act, the agency is directed to issue minimum safety standards and to enforce those standards against interstate pipelines and also intrastate pipelines. But states like California, if they issue a certification that satisfies 60105B and C, then under 60105A, they automatically take over exclusive regulatory authority over the intrastate pipelines. And it is completely understandable why Congress did that, because when it passed the Pipeline Safety Act, already 47 or 48 states had precisely these regulatory schemes in place. So the state automatically takes over enforcement authority. Now, the agency retains oversight authority over the state, but that authority is entirely discretionary. And that's clear if you look at the language of the statute. So under 60105E, it provides that the agency may monitor the state to ensure that it's complying with the certification. So it's very clear that it's discretionary. And that's exactly the sort of monitoring the city is doing it. Then again, in 60105F, it provides that if the agency finds that a state is not satisfactorily enforcing the regulations, it may take action that can include decertifying the state or asserting U.S. jurisdiction over intrastate pipelines, but it first has to give the state opportunity for notice and opportunity for a hearing. And that provision stands in stark contrast to 60106E2, which pertains to interstate agreements. So states can take over regulation of interstate agreements, but there, because the agency really has the authority to regulate those pipelines, what Congress did was it provided for mandatory termination. So there, it's entitled mandatory termination, and it states that if the secretary finds that the state is not doing a good enough job regulating interstate pipelines, then it must, it shall, end that agreement. So just the contrast there makes very clear that Congress did not contemplate any mandatory duty on the part of the agency to decertify states. And that makes perfect sense. It also — MR. MILLER So has the agency ever decertified a state? MR. GARRETT It has, Your Honor. It decertified the District of Columbia, and it decertified Hawaii. It's also threatened decertification in a couple of instances. And in this case, it certainly sent an extensive, a long and stern letter to CPUC and has been working with CPUC to address problems following the incident that underlies this case. MR. MILLER Well, I assume that the agency has criteria for decertification, right? MR. GARRETT I'm not aware of anything in the regulations or the guidelines that sets out the criteria, but I would imagine that they do have some internal guidance. It's not part of the record here. But the important thing is that decertifying a state is just like any other enforcement activity. So it's very similar to the EPA's enforcement activities in Sierra Club v. Whitman, where the statute provided that the EPA shall institute a civil action if it finds a violation of the Clean Water Act. And this Court said that the decision to institute a civil action was committed to agency discretion, despite the language of that statute, which was more mandatory than the language of the statute here. And the Court also said that the predicate decision of, you know, whether to make a finding of whether there was a violation, that also was committed to agency discretion. So the City here, you know, in some points in its brief tries to say, well, even if we can require them to take an enforcement action, we can at least require them to make a determination in the first place. But that's squarely precluded by Sierra Club v. Whitman. And it makes sense, once again, because that finding and the enforcement decision are really one and the same, and they implicate the exact same policy considerations about allocations of agency resources and how it should operate programs. DR. EISENACH So basically, the agency's position is it has unfettered discretion in this regard? MR. GARRETT Well, in that sense, it's no different from any other agency that operates these schemes. And, for example, in Sierra Club v. Whitman DR. EISENACH Let me follow up on that for a minute. Let's assume hypothetically that a state came in and the agency knew that it had no enforcement mechanisms in place and still proceeded with certification. Your position is that decision is unreviewable? MR. GARRETT Well, I should say there is a narrow exception recognized in Heckler v. Cheney and other cases for a complete abrogation of the agency's duty. But there's nothing in the complaint that alleges anything remotely close to that here. So here, the agency does conduct an annual program review. It conducts an annual program evaluation. It looks at all the inspection activity of the state, all the hours spent actually inspecting pipelines. It conducts field investigations. And you can see, in fact, in the record at pages 683 to 692, there's an example of the agency's scoring from 2011. And it shows that it does look at all of these factors. States get different scores. California ended up receiving around 70% funding in 2011. Puerto Rico received closer to 60%. Other states closer to 80%. So the state is certainly conducting an evaluation of all the states here. The other thing that is clear is that the agency has taken actions and is continuing to take actions to improve its oversight actions. So here, there was the NTSB report following the incident. The agency took action in response to that. Congress amended the act, the Pipeline Safety Act, in 2011. The agency then took additional actions. And as the city brought to this court's attention its 20HA letter, there was an inspector general's report within the Department of Transportation with seven recommendations. And the agency has satisfied already six of those seven recommendations. The last recommendation, it's scheduled to meet with the inspector general in July and is optimistic that it will close out that recommendation. So it's certainly not the case. We're not in that hypothetical world where the agency is just sitting on its hands doing absolutely nothing at all. It is actively overseeing the states and it is actively trying to improve its own oversight. So let's assume for the sake of argument that the city had pled complete abdication, okay? They would be entitled to discovery as to what the agency was actually doing, correct? Well, they may be In other words, it would not be a 12B6 dismissal. Exactly. So we're at a 12B1 on this. And so the court was entitled and I think did look at some records outside of the complaint. For example, the agency put into the record all of its guidelines. So the city, you know, at that point would have had its opportunity to put in additional evidence if it wanted to. But there simply isn't anything out there. They didn't put pleaded in the complaint. And all of the records outside of the complaint that are, you know, part of the record here simply confirm that the agency is actively overseeing states. But it's your position that if the city were for, I mean, if PHMSA did a coin flip and that's how they would determine whether or not funding would proceed, that would be actionable on behalf of the city of San Francisco? I mean, if the agency were doing a coin flip, I think you'd be getting awfully close to that abrogation of agency responsibility exception. Just close? Sorry? Just close? Well, you might very well be in it, Your Honor. I don't know of a court case that's ever decided that precise issue. But the point is there is something in the doctrine for committed agency discretion to deal with that sort of scenario. So there is sort of a safety valve available. But I'm careful with using the word safety valve in this case. But the idea that an agency can do kind of a bad job, I think what the city is alleging here is they're saying, look, we don't want to wait for the next San Bruno. And why should we wait around for CPUC and come back together when we have things blowing up very close to this city? Your position is, well, if that's the case and that PHMSA is doing a bad job in working with the CPUC, under the APA, that's not actionable. I think that's right, Your Honor. And I think your characterization of the city's claim is correct. What they're doing here is trying to get a review of the sufficiency of the agency's action. They characterize it as a failure to take action or arbitrary and capricious action. But what they're really saying is, you're not doing a good enough job. And the APA does not provide for that review. And this Court in Sierra Club v. Whitman said, to leave enforcement decisions to the discretion of the administrator is not to relieve the EPA of its mission to achieve compliance with the Act. It simply means that the EPA must decide, within the limits set by Congress, the most effective way to accomplish that goal. And as I already indicated — But we're not talking about pure enforcement here. We're talking about certification. Wouldn't you agree that they are two different concepts? They are. But under the statute, under 60105A, the state automatically takes over authority once it submits that certification. Right. But the certification decision is committed to the agency under certain criteria. And basically the city is saying, you failed to follow the criteria. No, I don't think that's right, Your Honor. So what the statute provides is that if the agency automatically takes over authority, and the city is not alleging that the certification didn't satisfy 60105B or C, what they're alleging is that the state has not satisfactorily enforced the regulations after being certified. And that is addressed in 60105F, where it provides that if they're not satisfactorily enforcing, then the secretary may decertify. It's also — to move over to the funding for a moment — it's the exact same setup. So in 60107A, it provides that the agency can fund up to 80 percent of the costs. But nowhere in 60105A does it say satisfactorily enforcing. It says up to 80 percent of the costs that are reasonably required to conduct this program. And then in 60107B, it provides that if the secretary finds that they're not satisfactorily enforcing, the secretary can withhold funds. So if the city were correct and this requirement were read into 60107A or in 60105A, then those provisions — 60107B and 60107F — would have no role to play at all in the statutory scheme. The fact that those provisions are explicitly discretionary just shows that these decisions are committed to agency discretion. And the city still hasn't pointed to anything, any language in the statute that says otherwise. And in both cases, enforcement decisions are presumptively committed to agency discretion. And similarly, funding allocation decisions are presumptively committed to agency discretion. And the city simply hasn't overcome that presumption. Now that specifically goes to 7062, but all those same arguments apply equally to their 7061 failure to take agency action claim. There, you have to identify a discrete and clear reason. This Court has said it has to be so clear that it would be a basis for a mandamus claim. The city simply clearly hasn't met that obligation. And all those same reasons, even if the city were able to bring this claim under the citizen supervision in the Pipeline Safety Act, if they had brought that claim, it would still fail for all the exact same reasons. As this Court made clear in Coos County Board, a mandamus claim under a citizen supervision is subject to the exact same standards as an APA claim under 7061. So that mandamus claim would fail for the same reasons because they haven't identified a mandatory and discrete action. But as we explained in our brief, the citizen supervision here does not provide for this sort of mandamus claim. And that's clear simply by comparing this statute to the Clean Water Act, the EPA, where when Congress wanted to provide for this sort of action, it provided a separate mandamus provision. And the city, counterintuitively here, is arguing that the absence of that mandamus provision means you should read the citizen supervision more broadly. That simply doesn't make sense. If Congress knew how to provide for mandamus claims when it wanted to. I do have a question about the PSA. I don't want to cough at anyone's questions here. I'm actually more concerned not with the APA issue, but for the PSA issue. Because the PSA does have this citizen supervision. And can you explain under the government's interpretation, federal government, not local government's interpretation of the PSA, when would the citizen supervision apply? So the citizen supervision here, just like the same provisions in all these other environmental acts, allows citizens where they see, you know, an actual operator out there who's subject to the substantive provisions of the Pipeline Safety Act and the regulations, violating those provisions. If the agency hasn't taken action against that operator, the citizen can institute a lawsuit to do that. What it doesn't do is allow the citizen to challenge the agency's regulatory, what the agency's doing in its regulatory capacity. But could the city of San Francisco sue then the CPUC under this statute? No, it wouldn't extend to CPUC either, because that would be in its regulatory capacity. But what it would allow is a lawsuit against PG&E. If CPUC and the Department of Transportation were not adequately regulating a certain pipeline, you know, operated by PG&E, that's what the citizen supervision is in place for. But doesn't the citizen supervision provide that the United States can be sued? It does, Your Honor. But when would this lawsuit ever happen? Well, our position is, in accord with the city's, that the federal government's operation of pipelines is not subject to the Pipeline Safety Act. But I will say no court, there has been no citizen supervision brought against a federal operator, and so no court has ruled on that issue. But I think there's a simple explanation why that language is in the statute, and that's the fact that it is almost exactly the same language that is in all the other citizen supervisions that were all passed around the same time. So the Clean Air Act's citizen supervision was passed, was instituted in 1970, the Clean Water Act in 1972, the Endangered Species Act in 1973, and this was instituted in 1976. And they all have that same, against the United States government or other government entities to the extent allowed by the 11th Amendment, language. And it may be that that's surplusage in this case, but the canon against surplusage is not an absolute bar. This truly is an implausible reading of the citizen supervision. The city hasn't been able to point to a single case that's ever read this sort of language to allow for a mandamus claim against an agency. And in fact, both the Fifth and the Tenth Circuit read almost precisely the same language in the Outer Continental Shelf Lands Act to not provide for mandamus relief. So even if it is surplusage, that's not sufficient to implicitly repeal the APA with respect to these claims and to have this implausible reading. So the agency's position is that it can't be sued, even though the statute says it can? Well, the APA provides for lawsuits against agencies, but only where— We're not talking about the citizen supervision. I mean, the United States is specifically named, but I gather the agency's position is it doesn't mean anything. In this case, it may well be surplusage, Your Honor. But that reading is — it's a normal reading of the language. Surplusage means it doesn't mean anything? Is that what you're saying? That's right, Your Honor. And — but that reading is the normal reading of the language as it is in every other statute. And I should also point out that Section 60119 also weighs in favor of our interpretation of 60121, because 60119 provides for challenges to regulations and orders directly in the Court of Appeals, and it would be very strange if you could bring the exact same lawsuits under 60121 just by framing it as a violation of the Pipeline Safety Act. I've gotten through everything. If there are no further questions, thank you very much for your time. Thanks, Counselor. Thank you. I found the case, Oregon Natural Desert Association v. U.S. Forest Service. And that's a case where there was an annual issuance, but nonetheless, each and every one of those annual issuances were final agency actions for purposes of the APA. The agency spent, PHMSA spent, PHMSA's counsel spent his entire time at this podium essentially arguing we have unfettered discretion. We have no mandatory duties under the statute, and any discretionary duties we undertake are committed to our discretion by law. That's not a tenable position. The presumption is that acts that agencies affirmatively take are reviewable for abuse of discretion under 7062A. What San Francisco has alleged here are affirmative acts of the agency that are abuses of discretion. For example, paragraphs 76 and 100, for instance, we allege that in May 2010, CPUC audits PG&E and finds that it has violated Pipeline Integrity Management Program standards. That same year, it certifies to PHMSA that all of its operators, except one that's not PG&E, have acceptable Pipeline Integrity Management Programs in place. That certification is not true based on what CPUC found earlier that year. PHMSA knows it because it has participated in audits of PG&E in the past. Nonetheless, it issues a grade to CPUC, and the grades are available at excerpt of record 690 and pages surrounding that. So every year, PHMSA is taking affirmative action with respect to CPUC's certification. Now, this issue and those affirmative actions, what we've alleged, are abuses of discretion. They are final agency actions that are abuses of discretion. And so PHMSA says, well, but this implicates our enforcement decisions and it implicates our budget, and so it's not reviewable. But let's take a step back for a minute. That line of cases comes from the principle that a court can't review an agency's action for abuse of discretion when there is essentially no law to apply. There are no standards against which to measure the agency's action. That isn't the case here. PHMSA has paper standards. They're just not concerned at all with whether or not CPUC is actually enforcing those standards. So this isn't a case where the court doesn't have any standards, doesn't have any law, and would just be inserting its own preferences into whatever decision it makes. This is a case where there are standards in place against which we can measure CPUC's action and PHMSA's enforcement of those actions. There are standards. So indeed, as Mr. Nemeroff was suggesting, you're critical of the agency's review of the sufficiency of the evaluations, or the agency's view of the sufficiency of the evaluations of the CPUC. Yes. The annual decision. The annual decision. All right. So where does all this lead? Let's assume you're successful. Walk me through the next steps. You want the government, whom you say is doing a poor job of monitoring, to take over? No. I think that what happens in these cases, if the agency has abused its discretion, then typically what a court will do is say, you have failed to consider this important aspect of the problem, you made a clear error in judgment here, and they remand to the administration to exercise discretion. Right. But that works in the environmental context because, but it's a separate regulatory structure. Yes. This is a different regulatory structure. So walk me through, if you're successful, what you envision happening. Sure. So I think the court takes, looks at the entire agency record, because that's where we start for a review of an administrative decision. Right. Let's assume you win that. We find that there was an arbitrary and capricious action. So we reverse the annual certification, the funding disappears. True? No, no. Not necessarily. The agency has a number of options. The PHMSA has options, and that's in 60-105-F, I believe. It says you can reject the certification, you can take away the money, or take other appropriate action. And I do think what kind of appropriate action to take is committed to the agency's discretion in the first instance. So they say, we're not going to take any action? Well, I think that's an abuse of discretion. I think to take no action to promote safety under these facts, on this record, is an abuse of discretion. And so I think the court would say, it's your decision what action to take. You have to take some action. And then it goes back to the agency and they decide. And I think that's typical for APA claims. And you think that, under your theory, this could happen every single year? Well, I would hope that the agency... I think the answer is yes. In theory, yes. In theory, yes. The same as it could under Oregon Natural Desert Association. These were annual issuances. I believe, I think fundamentally, PHMSA sees itself as a file cabinet and an ATM for the states. It accepts these certifications, it files them away, it dispenses money. I think that's a wrong-headed view of the statute. I think a court could correct PHMSA's understanding here of its responsibilities, and I think in good faith, to actually review whether enforcement is occurring, and actually review whether CPUC's assertions of its compliance with the statute are true. And I think that, going forward, the agency would do its best to exercise its discretion appropriately. But if the agency did that at the end of this line of proceedings, look it all over and say, well, we decide to do nothing further, we get nowhere, do we, in the scheme of things, it just becomes this catch-22. No, I disagree, Your Honor. I think the agency, there are some actions that simply aren't within the agency's discretion. For example, the agency can't, within an appropriate exercise of its discretion, give CPUC a 100 for pipeline safety management when its major operator doesn't have a pipeline integrity management program that meets the regulatory standards. Plus, they're limited to 80 percent anyway. Well, they're limited to 80 percent of funding. Oh, funding. Yeah, they get a score, and then it's plugged into a formula, and that determines how much funding there is. Which, by the way, is part of the reason why this isn't just a budgeting decision. There is a formula. We're challenging the application of that formula, not the creation of the formula in the first instance. The statute says may monitor, which implies they may not monitor. True? I think that goes to the mandatory duty issue under 706.1. I think that is an uphill road for us in this case. I do. So do you think that the agency, for example, might say, we know there are problems in California, but there are worse problems in, say, D.C. or Louisiana, and we have limited resources. We need to focus on those problems. Do you think the agency could justifiably do that in its discretion? Well, I think the agency, in its discretion, could. It can't say, CPUC, we give you this superior or outstanding grade because you're doing an awesome job. That is not an appropriate exercise of discretion on these facts. But if PHMSA says, CPC, you're doing a crummy job, but we only have 20 inspectors, and so we can't send them to you right now to help you out. We're going to send them to some other state instead because of our budget constraints, that might be an appropriate exercise of discretion. The agency Or the agency could say, well, we agree with you. We probably gave it too high a score. We're giving it a 30, and we're going to limit funds. So at the end of the day, California gets less money. Well, the agency has a number of actions it can take, and we could get to that place where we have to evaluate what action it actually takes for abuse of discretion. But the consequence of changing the score, which is one of your major complaints, is reduction of funding, true? I don't think we are saying that the only way PHMSA can satisfy its obligations under the statute is to reduce CPC's funding. I don't think we're saying that at all. 60-105-F says the agency can reduce funding, assert jurisdiction, take other appropriate action. Those are all things it can do. I don't know what that other appropriate action will be right now at the pleading stage. But I think there's a lot of discretion the agency has to take other appropriate action, and ultimately courts review that the same way they do any final agency action under the APA for whether it's arbitrary and capricious, whether it's failed to consider important aspects of the problem, whether it's a clear error in judgment. And that's something courts are equipped to do. But we're not there right now. There's a clear error in judgment in accepting CPUC's annual certifications year after year. Those are final agency actions. There's no assertion otherwise. And at the pleading stage, we should at least get the administrative record and have a court pass on whether we have in fact successfully made out an abuse of discretion claim. But for this case not to proceed beyond the pleadings, beyond the stage where we simply allege there's been an abuse of discretion, I think is erroneous. Our questions have taken you over time. Any further questions from the panel? No. Thank you, counsel. I thank you for your attention. Thank you. Thank you both for your arguments and briefing. Interesting case. And it will be submitted for decision. We'll be in recess.
judges: Thomas, Owens, Battaglia